**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **United States of America,** | ) | **CASE NO.**   **1:15 CR 453-1** |
| | ) | **1:15 CR 453-4** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Kenneth Jackson, Jr., et. al,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendants.** | ) | |

**INTRODUCTION**

This matter is before the Court upon the Government's Motion to Introduce Evidence Inextricably Intertwined or in the Alternative as Other Acts (Doc. 55, 69).[1] In the motion, the Government seeks leave to introduce at trial evidence that it asserts is "inextricably intertwined" with the offenses charged in the Indictment or that constitutes "other acts" evidence that is admissible under Federal Rule of Evidence 404(b). Defendants oppose the motion. For the

---

[1] For clarity, the Government's original motion (doc. 55) and its Supplemental Motion to Introduce Evidence Inextricably Intertwined or in the Alernative as Other Acts (Doc. 69) will be referred to in the singular.

1

reasons discussed below, the motion is GRANTED IN PART AND DENIED IN PART.

**BACKGROUND**

On December 15, 2015, Defendants Kenneth Jackson, Jr. and Antowine Palmer, among others, (Palmer and Jackson, collectively, "Defendants") were charged with five counts of carjacking in violation of 18 U.S.C. § 2119(2) and 2, as well as five counts of brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii). The alleged carjackings occurred between the dates of July 25, 2015 and August 19, 2015.

In its motion, the Government seeks to introduce evidence at trial that Defendants were members of the Heartless Felons Broadway ("HF Broadway") gang. In particular, it asks to present evidence that members of HF Broadway were involved in retaliatory drive-by shootings with a rival gang, the Heartless Felons Fleet ("HF Fleet"). If permitted, the Government states that it would call Detective Al Johnson of the Cleveland Division of Police, who has been qualified by the Cuyahoga County Common Pleas Court as an expert in criminal gang investigations, and who was one of the detectives who investigated the retaliatory shootings between the two gangs. Specifically, Detective Johnson would testify that:

> On the specific dates previously mentioned from April 2015 through August 2015, at specific locations, participants from HF Broadway and HF Fleet were either the victim or perpetrator in a retaliatory shooting. The government would also introduce that the location of the shooting was territory of HF Broadway or HF Fleet, or neither. The government would also introduce whether the incident was a drive-by shooting, or other type of shooting.
>
> On April 15, 2015, Antowine Palmer was shot during a drive-by shooting.
>
> On May 5, 2015, Antowine Palmer and another HF Broadway member were shot.
>
> On May 3, 2015, Kenneth Jackson was shot.
>
> On August 12, 2015, at approximately 9:00 p.m., a member of the HF Fleet sect

>    was shot during a drive-by shooting, meaning from a vehicle, by Antowine
>    Palmer, a member of the HF Broadway sect. The shooting happened in an area
>    considered to be HF Fleet territory (This incident happened after the two
>    carjackings on August 12, 2015 but before the carjackings on August 13 and
>    August 19, 2015.)

(Doc. 69, at 3).[2] The Government also seeks to introduce the testimony of co-defendant Calvin Rembert, who was involved in the July 25, 2015 carjacking charged in Count 1 of the Indictment. In addition to testifying as to the events surrounding the July 25, 2015 carjacking, the Government states that Rembert would testify as to his relationship with Defendants, Defendants' positions in HF Broadway, their roles in the carjackings, and the purpose of the carjackings. (*See* Doc. 69, at 6).

**ANALYSIS**

The Government argues that the evidence it seeks to introduce is admissible as "background" evidence. To qualify as background or "intrinsic" evidence, the evidence must be "inextricably intertwined with the charged offense or those acts, the telling of which is necessary to complete the story of the charged offense." *United States v. Hardy*, 228 745, 748 (6th Cir. 2000). Evidence that falls into this category:

>    has a causal, temporal or spatial connection with the charged offense. Typically,
>    such evidence is a prelude to the charged offense, is directly probative of the
>    charged offense, arises from the same events as the charged offense, forms an
>    integral part of a witness's testimony, or completes the story of the charged
>    offense.

*Id.* (quotations omitted). If the Government can establish that the evidence it seeks to introduce is intrinsic evidence, then Rule 404(b) is not implicated, but the court must still satisfy the

---

[2]  The Government also notes that it could introduce the evidence of the shootings through witnesses who have first-hand knowledge of them. (Doc. 69 at 3).

3

traditional Rule 403 balancing test to determine if the probative value of the evidence is substantially outweighed by a danger of unfair prejudice. *United States v. Dimora*, 843 F. Supp. 2d 799, 824 (N.D. Ohio) (citing *Hardy*, 228 F.3d at 750).

If the evidence is not proper intrinsic evidence, then the Government must show that it meets the requirements of admissibility under Rule 404(b). Rule 404(b) states that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). However, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* In determining the admissibility of evidence under Rule 404(b), a district court uses a three-step process:

> First, the district court must decide whether there is sufficient evidence that the other act in question actually occurred. Second, if so, the district court must decide whether the evidence of the other act is probative of a material issue other than character. Third, if the evidence is probative of a material issue other than character, the district court must decide whether the probative value of the evidence is substantially outweighed by its potential prejudicial effect.

*United States v. Adams*, 722 F.3d 788, 810 (6th Cir. 2013) (quoting *United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir.2003)).

With respect to evidence of gang affiliation, in particular, the Sixth Circuit has noted that "[t]rial courts must treat [such] evidence with care since most jurors are likely to look unfavorably upon a defendant's membership in a street gang." *U.S. v. Tolbert*, 8 Fed. Appx. 372, 378-79 (6th Cir. 2001). The Sixth Circuit has held that "evidence of gang affiliation is admissible to establish the defendant's opportunity to commit a crime, or where the interrelationship between people is a central issue in the case, subject to balancing the probative value of such

4

evidence against its prejudicial effect pursuant to Rule 403." *Id.* (citations omitted).

### A. Detective Johnson - Gang Affiliation and Shootings between HF Broadway and HF Fleet

On review, the Court finds that the proposed evidence the Government seeks to introduce through Detective Johnson is not admissible. With respect to Defendants' gang affiliation, none of the charges in the Indictment charge Defendants with gang activity. To the contrary, in each of the common pleas court cases cited by the Government where Detective Johnson was allowed to testify as an expert in gang activity, the defendants were charged with gang activity or with criminal gang specifications. Nor does Detective Johnson's proposed testimony bear on the types of issues where evidence of gang affiliation would be admissible. General background evidence about the relationship between HF Broadway and HF Fleet and the drive-by shootings between the two gangs is not probative of Defendants' opportunity to commit the carjackings charged in the Indictment or the interrelationship between Defendants and members of HF Broadway.

The Government argues that evidence of the shootings between the two gangs is intrinsic evidence because the shootings were a prelude to the crimes charged against Defendants and "complete[] the story regarding how and why the carjackings occurred and why certain individuals, including Palmer and Jackson, Jr., participated." (Doc. 55, at 10). Even if the evidence is not intrinsic, the Government argues that it is admissible under Rule 404(b) because "Palmer's plan for the carjackings was to have different vehicles to use in drive-by shootings. His motive was to use a vehicle unrecognizable to HF Fleet. If a HF Fleet member recognized a HF Broadway vehicle in advance of a drive-by, the drive-by might not be successful." (Doc. 55, at 12). The Government also states that it anticipates that Defendants "will assert a defense that [they were] not present for any of the carjackings, or had no knowledge other HF Broadway

members and/or co-defendants were committing the carjackings. They will directly put at issue knowledge of the offenses, and participation in the offenses." (*Id.*).[3]

As set forth in the Government's supplemental motion, the proposed testimony of Detective Johnson regarding the shootings does not bear on any of the purposes for which the Government seeks to use it. His testimony is simply that a number of shootings occurred between the rival gangs. The Government does not state that he will testify that any of these shootings occurred in the cars that were stolen during the carjackings charged in the Indictment–or that the shootings occurred in stolen cars at all. Indeed, three of the shootings that he proposes to testify to occurred more than two months before the first carjacking alleged in the Indictment.[4] Without this link, Detective Johnson's testimony does not show how the shootings were a prelude to, or complete the story of, the charged offenses and is not probative of Defendants' motive or knowledge of the offenses. The Government has not cited any cases where evidence with such a tenuous link was properly admitted as intrinsic evidence or under Rule 404(b). Where uncharged conduct has been deemed admissible in carjacking cases, the connection between the evidence and the carjacking charge was far more obvious. *See United States v. Edmond*, 815 F.3d 1032, 1045-46 (6th Cir. 2016) (holding that evidence that defendant charged with carjacking conspiracy fired shots into a car was properly admitted as intrinsic evidence because he was riding in car that had recently been carjacked and was used in the

---

[3] There is no dispute that the shootings occurred; thus, the Government can establish the first step of the 404(b) analysis.

[4] Should the Government be able to show that Palmer committed the drive-by shooting on August 12, 2015, from one of the stolen cars in the Indictment, that would be a sufficient connection between the assault and the charged offenses to constitute intrinsic evidence.

commission of a carjacking, the weapon he fired was used by a co-conspirator later that day to carjack another vehicle, the incident occurred the day after one carjacking and the day before another, and the evidence established the relationship between the conspirators and tied the defendant to the weapon used to commit a number of carjackings); *United States v. Hughes*, 562 Fed. Appx. 393, 396 (6th Cir. 2014) (holding that district court properly admitted under Rule 404(b) carjacking co-defendant's testimony that he and defendant used the vehicle that was the subject of the carjacking charge within a three-hour span after the carjacking to commit three robberies).

Because the minimal probative value of Detective Johnson's proposed testimony is substantially outweighed by the danger of unfair prejudice to the Defendants, it may not be introduced at trial.

### B. Calvin Rembert

The Government also seeks to introduce the testimony of co-defendant Calvin Rembert. Rembert was involved in, and charged with, the carjacking that occurred on July 25, 2015, and that is charged in Count I of the Indictment. Defendants do not dispute that Rembert may testify as to the July 25, 2015 carjacking.

The Government, however, also seeks to introduce testimony from Rembert regarding his relationship with Defendants, Defendants' positions in HF Broadway, their roles in the carjackings, and the purpose of the carjackings. Rembert's testimony regarding his relationship with Defendants and their positions in HF Broadway is admissible to show the interrelationship between the co-defendants. The Government notes that Palmer stated to law enforcement that no victim can identify him. It posits that this is because Palmer ordered others to commit the

carjackings for him. Thus, Palmer's position in HF Broadway and his ability to order other members of the gang, including Jackson, to commit the carjackings is a central issue in the case. As to the motive for the carjackings, Rembert's proposed testimony that the Government seeks to introduce appears to address only the motive for the carjacking on July 25, 2015. (Doc. 69, at 4-6). According to the proposed testimony, Rembert will testify that the Defendants wanted to use a stolen car on that date to attack members of HF Fleet. This testimony is inextricably intertwined with the offense charged in Count I of the Indictment, and its probative value is not substantially outweighed by the danger of unfair prejudice. Because the Government has not identified any proposed testimony by Rembert going to the motive for the other carjackings charged in the Indictment, the Court will not opine on the admissibility of such testimony.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Introduce Evidence Inextricably Intertwined or in the Alternative as Other Acts (Doc. 55, 69) is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

/s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 2/17/17