IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:15-CR-00453 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| KENNETH JACKSON et. al., | ) | **DEFENDANT'S SENTENCING** |
| | ) | **MEMORANDUM** |
| Defendants. | ) | |
| | ) | |

Now comes the Defendant, Kenneth Jackson, by and through his counsel, Kevin M. Cafferkey, and files this Sentencing Memorandum. Mr. Jackson respectfully requests this Honorable Court to consider a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553. Mr. Jackson incorporates herein by reference his original sentencing memorandum, filed in this matter. Mr. Jackson is respectfully requesting this Honorable Court to consider all of the legal arguments as well as mitigation arguments presented herein and impose a reasonable sentence. Mr. Jackson is requesting that he be given credit for time served since the date of his arrest, August 14, 2015 through current. A more thorough explanation of this request is set forth in the attached Memorandum in Support.

                                  Respectfully Submitted,

                                  /s/ Kevin M. Cafferkey
                                **KEVIN M. CAFFERKEY, (#0031470)**
                                Attorney for the Defendant
                                55 Public Square
                                2100 Illuminating Building
                                Cleveland, OH 44113
                                (216) 363-6014
                                kmcafferkey@hotmail.com

**MEMORANDUM IN SUPPORT**

I. **BACKGROUND.**

On December 15, 2015, Kenneth Jackson Jr. was named in a 28-count Indictment, alleging multiple counts of carjacking in violation of 18 U.S.C. § 2119(1) and using/carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c). On May 3, 2017, Mr. Jackson was found guilty by a jury of Counts 1, 2, 6, 7, 10, and 11 of the Indictment for the July 25, 2015 carjacking of victim D.G and the July 26, 2015 carjacking of victims G.B. and Z.N. On March 12, 2019, the Sixth Circuit Court of appeals vacated one of Jackson's firearms convictions and remand his case for a resentencing hearing, stating specifically:

> Jackson's conviction for violation of § 924(c) under Count 11 is VACATED and we remand for resentencing. The remainder of Jackson's convictions, as well as Palmer's convictions and sentence, are AFFIRMED.

The Sixth Circuit did not consider Jackson's Appellate argument as to the reasonableness of his sentence, as the case was remanded for a full re-sentencing hearing, specifically stating "Because we remand for resentencing, we do not reach Jackson's argument on this point."

II. **GUIDELINE RANGE.**

The total offense adjusted offense level in Mr. Jackson's presentence report ("PSR") is twenty-seven (27). (PSR, R. 215, PAGE ID 2843). Mr. Jackson receives six (6) criminal history points for his juvenile convictions, establishing a criminal history category of III. *Id*. at PAGE ID 2843. Based upon an adjusted offense level of twenty-seven (27) and a criminal history category of III, his guideline range is 87 months to 108 months imprisonment as to Counts 1, 6, and 10.

At his original sentencing hearing of August 23, 2017, this Honorable Court considered all of the arguments of the government and defense counsel, as well as the §3553(a) factors and

sentenced Mr. Jackson to the custody of the Bureau of Prisons to be imprisoned for a term of 87 months as to Counts 1, 6, and 10, to be served concurrently. (Sent. Trans., R. 197, PAGE ID 1691).

In its current sentencing memorandum, the government argues for a sentence at the highest end of the range, stating: "The government submits in light of the sentence in Count 11 being vacated, the Court should entertain a guideline sentence of 108 months at the highest end of the range, or even an upward variance from the guidelines." (Gov. Sent. Memo, R. 217, PAGE ID 2872). Mr. Jackson prevailing in his legal appeal does not provide any reasoning to support an increased level of punishment pursuant to the §3553(a) factors. The government also points out, "The facts today are the same as they were when this Court first sentenced Jackson." (Gov. Sent. Memo., R. 217, PAGE ID 2872). Considering all the facts the same as they were presented during his first sentencing hearing, this Honorable Court determined that a concurrent sentence of 87 months imprisonment as to Counts 1, 6, and 10 of the Indictment was sufficient, but not greater than necessary to achieve the statutory goals of sentencing.

The only new facts for this Honorable Court to consider are (1) The change in law, i.e. the First Step Act and the Sixth Circuit's ruling; and (2) Mr. Jackson's post offense rehabilitation throughout the approximately 1,404 days he has spent incarcerated in this matter.

### III. THE APPLICATION OF THE FIRST STEP ACT.

On December 21, 2018, the First Step Act was signed into law. Section 403 of the First Step Act revised § 924(c)(1)(C) by providing that the higher penalty for a "second or subsequent count of conviction" under section 924(c) is triggered only if the defendant has a prior section 924(c) conviction that has become final. Further the Act provides that the amendments to section 924(c) **shall apply to any offense that was committed before the date of enactment of the**

**Act if a sentence for the offense has not been imposed as of such date of enactment**. As a result, Mr. Jackson is statutorily entitled to the application of the First Step Act at his upcoming sentencing hearing because a sentence for his offense has not been imposed. This Honorable Court will be issuing a sentencing determination as to Counts 1, 2, 6, 7, 10, and 11 of the Indictment at the upcoming sentencing hearing. As a result, the language of the First Step Act and the Congressional intent is clear, Mr. Jackson qualifies for relief under the new law.

In Mr. Jackson's Final Revised Presentence Report, the Probation Department replied to the Defendant's objection, stating:

> In *Dorsey v. United States*, 567 U.S. 260 (2012), the Court outlined that Section 109 sets a default rule that the penalties for a crime are those in place when the defendant commits it, and that courts therefore "must assume that Congress did not intend [new] penalties to apply unless it clearly indicated to the contrary." Therefore, per the Sixth Circuit Court of Appeals decision, Count 11 of the Indictment in this case is vacated and the remaining counts stand affirmed.

(PSR, R. 218, PAGE ID 2902). In *Dorsey*, the United Sates Supreme Court held that the reduced mandatory minimum sentences for "crack cocaine" under the Fair Sentencing Act of 2010 applied to defendants who committed a crime before the Act went into effect but who were sentenced after that date. The Act's silence on how to apply its new rules, before the effective date or not, caused a split among the Justices on how to interpret its new lenient provisions. Dorsey had been convicted of possession before the new rules came into effect but was sentenced after the effective date. The Court concluded that Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders because it was the Act's " plain import" or "fair implication." *Id*. at 281. In the First Step Act, Congress chose language that points clearly toward that same result: the date of sentencing in the district court controls application of the new, more lenient terms. Lastly, in

response to the Probation Department's argument that the remaining counts stand affirmed, Mr. Jackson would agree that the remaining counts stand affirmed, but that the potential legal and statutory penalties for those affirmed counts has now changed. He is seeking relief under the change in law, not the count of conviction.

Mr. Jackson's case was remanded for a full re-sentence hearing. "In the absence of an explicit limitation, the remand order is presumptively a general one." *United States v. Moore*, 131 F.3d 595, 598 (6th Cir. 1997). "A limited remand must convey clearly the intent to limit the scope of the district court's review." *United States v. Campbell*, 168 F.3d 263, 267 (6th Cir. 1999). As a result of Mr. Jackson's sentence being vacated and the Sixth Circuit ordering a full re-sentencing hearing, the Congressional intent is to provide Mr. Jackson the appropriate relief under the First Step Act. The government's sentencing memorandum contradicts itself. The government is asking this Honorable Court to not consider this to be a full resentencing hearing with regards to the First Step Act, while also arguing that this Honorable Court is permitted to consider this to be a full resentencing hearing to justify the upward departure the government is requesting:

> When a district court sentences a defendant after a remand, **it is permitted to revisit the entire sentencing procedure**, unless the remand order prohibits it. *United States v. Bond*, 171 F.3d 1047, 1048 (6th Cir. 1999). The Court is even permitted to impose a sentence higher than the original one, if that increase is due to **specific conduct or events that have taken place since the original sentence, and not due to vindictiveness**. *See North Carolina v. Pearce*, 395 U.S. 711, 725-26 (1969); *United States v. Rodgers*, 278 F.3d 599, 603 (6th Cir. 2002).

(Gov. Sent. Memo., R. 217, PAGE ID 2872). As a result of the forgoing, Mr. Jackson objects to the PSR's determination that he is subject to a consecutive twenty-five (25) year imprisonment as

to Count 7 in paragraphs 46, 72, 108 and 110 and asks that this Honorable Court apply the First Step Act.

### III. POST OFFENSE REHABILITATION AND REMORSE.

Contrary to the government's argument in its sentencing memorandum, Mr. Jackson will explain to this Honorable Court his remorse for his bad decisions, what he has learned since that time in his life, and what he has done to better himself while incarcerated. At the time of his re-sentencing hearing, Mr. Jackson will have been incarcerated for three (3) years, ten (10) months and four (4) days. Prior to his arrest and incarceration in this matter, Mr. Jackson had never served any sentence of incarceration. He was only eighteen (18) years old.

This Honorable Court originally imposed a sentence of 771 months imprisonment, essentially a life sentence of sixty-four (64) years. Mr. Jackson was young and admittedly immature at the time he committed these offenses. He has grown up extensively over these last few years. Mr. Jackson would like to apologize for his past behavior. When he arrived at Hazleton, a high security U.S. penitentiary, Mr. Jackson did not realize what he had gotten himself into. As the months went on, he began to realize and it truly sunk in that he was never, ever, going to come home. Mr. Jackson became depressed but realized that he had to do something positive to give his life meaning and purpose. Mr. Jackson distanced himself from the younger, rowdy crowd in prison. He tried to find older inmates that could provide him with a positive atmosphere and help him with his depressive state. These inmates let Mr. Jackson know that his life was not over and gave him hope that someday, he would get out of prison and return to society. Mr. Jackson further states:

> "Your honor, I enrolled in GED classes. I have been waiting to take the test for a year. I took art classes and took a course in anger management. The programs are limited in Hazleton but I took what was available. I worked on basically becoming a man. I followed

the rules and stayed away from anyone that was trying to commit infractions. My only shot (discipline) was for being out of place. I got a 30 day commissary restriction for that. I have not been involved in any fights, contraband, or drug use.

A sentence of 64 years does change someone. It was a blessing and a curse. It opened my eyes to what life is about and who really cares for me. The streets don't care for me, my family does. I know I hurt my family and I want to make it up to them.

Prior to my arrest, I would wake up at home in Cleveland and go right out on the streets. I spent my days doing nothing. I was using drugs and making bad decisions. And when you use drugs every day, it clouds your mind and judgment. I looked up to people on the streets. I followed them and used drugs with them. I have now realized the people in the streets weren't trying to help me, they wanted to keep me down with them. I was doing nothing with my life when I got arrested.

Now my days in Hazleton begin with waking up at 6:00 a.m. I am in a two man cell. I wake up, brush my teeth, wash my face, and go work out in the recreation yard for some exercise. I would shower and go to my GED class from 8:00 to 9:00 am. Then I would have arts and craft class to help clear my mind until 10:30 am. After lunch I have a few hours of free time. I would sit and study, while also taking time to get help with my studies from older people. They helped teach me about real estate and business management. After dinner, I would go to my anger management program. My days ended with an hour or so of TV and then lights out and back in the cell at 8:45 pm. This has been my schedule every day for almost two (2) years. I came into Hazelton with a security level of 32 with high custody and now it has dropped to 27.

During these two years, I have had a lot of time to think about how my actions affected other people, most specifically the victims in this case. I know my actions scared them and I would like to apologize for what I have done.

I was never thinking about how what I did impacted other people. Now it is all I can think about. I have grown a lot at Hazelton and had a lot of time to think. I feel very bad about what I did and I wish I could take it all back. I pray the victims are all okay and can someday forgive me for my mistakes. I was 18 but acting like a dumb kid back then. Now, I am almost 23, but I feel like I am 30 because of how much I have learned and grown.

> Your Honor, I am mad at myself for what I did. I realize you were just doing your job to protect the community when you sentenced me. I was the problem. I know I was the problem. I stand before you a changed man. I know actions speak louder the words and I hope that you can see that I have worked hard to stay out of trouble the last two (2) years and do everything I can to prove to you, my family, and myself that my life can and does have purpose. I was out of control back then. I hope that you can see my remorse and growth, and that I can be a law abiding person in the future when I am released from prison.
>
> When I was in the streets, I never thought about my future. Now it is what I think about every day. I know that I am not getting out today, or anytime soon for that matter, but the first thing I am going to do is get my driver's license. I want to enroll in school. I want to get a job. Most importantly, I want to be there for my children. I have missed their entire lives. I want to work the hardest I can to make sure they never make the same mistakes I did. I want to be a success story. Thank you for your time.

Based upon the foregoing, Mr. Jackson respectfully requests this Honorable Court to consider his post conviction remorse and rehabilitation and remorse when imposing a sentence in this case. Mr. Jackson's post-offense rehabilitation and remorse in the instant case are sufficiently atypical of defendants similarly situated to Mr. Jackson to possibly even justify a reduction in his sentence under the guidelines.

## IV. EVALUATION OF 18 U.S.C.A. §3553(a) FACTORS TO DETERMINE A REASONABLE SENTENCE.

### A. LAW.

In fashioning an appropriate sentence, the District Court cannot presume that the Guideline range is reasonable but rather must also consider the factors enumerated in 18 USC 3553(a) to determine if an adjustment is warranted. *United States v. Booker*, 543 U.S. 220, 245-46, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). 18 U.S.C 3553(a) requires the Court to impose a sentence that is sufficient, but not greater than necessary and lists factors to be considered in imposing a sentence. Those factors include: (1) the nature and circumstances of the offense and

the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, provide just punishment, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, provide the defendant with needed training, care or treatment; (3) the kinds of sentences available; (4) the kinds and range of sentence under the guidelines; (5) pertinent policy statements by the Sentencing Commission; and (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct", and (7) the need to provide restitution.

Since *Booker* and its progeny, the sentencing court may now consider even those mitigating factors that the advisory guidelines prohibit, e.g., poverty, racial discrimination and humiliation, drug abuse and addiction, dysfunctional family background, lack of guidance as a youth, etc. See: *United States v. Ranum*, 353 F. Supp.2d 984 (E.D. Wisc. 2005) ("the guidelines" prohibition of considering these factors cannot be squared with the Section 3553(a)(1) requirement that the court evaluate the "history and characteristics" of the Defendant... thus, in cases in which a Defendant's history and characteristics are positive, consideration of all of the Section 3553(a)(1) factors might call for a sentence outside the guideline range").

B.  **ARGUMENT**

Mr. Kenneth Jerome Jackson Jr. was born on October 14, 1996 in Cleveland, Ohio and is currently twenty-two (22) years old. Mr. Jackson was initially raised by his mother who was addicted to drugs. As a result, when he was three (3) years old, Mr. Jackson was placed in the custody and care of Gloria Jimenez, his great Aunt. Ms. Jimenez provided him with a stable home but he struggled without having his parents in his life. Mr. Jackson considered Ms. Jimenez his mother and was devastated when she passed away when he was seventeen (17) years old. After his Aunt's death, Mr. Jackson went to live with his biological father and was separated

from his brother. Mr. Jackson began acting out and making bad decisions after this major life change. Based upon his criminal history, it is clear that the Defendant did not have any criminal conduct until after her death, with all of his prior criminal offenses occurring in a three (3) month span between September 29th and December 27th of 2013.

This Honorable Court must choose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence to criminal conduct, protects the public from further crimes of the defendant, and provides the defendant with needed training, care and treatment. 18 U.S.C. § 3553(a)(2). Mr. Jackson's presentence report chronicles the significant mental health problems and educational disabilities of the Defendant. Even given those challenges, Mr. Jackson has taking active steps towards earning his GED while incarcerated. Mr. Jackson has had a difficult childhood and was still an adolescent at the time of his arrest in this case. Based upon the foregoing, Mr. Jackson respectfully requests this Court to give due consideration to all of his mitigating factors including his disadvantaged childhood when imposing a reasonable sentence.

## V.  CONCLUSION

Mr. Jackson respectfully requests that this Honorable Court consider all of the 18 U.S.C. § 3553(a) factors and arguments described above and impose a sentence that is sufficient but not greater than necessary to achieve the statutory goals of sentencing.

Respectfully Submitted,

/s/ Kevin M. Cafferkey_____
**KEVIN M. CAFFERKEY, (#0031470)**
Attorney for the Defendant
55 Public Square
2100 Illuminating Building
Cleveland, OH 44113
(216) 363-6014
kmcafferkey@hotmail.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2019 a copy of the foregoing motion was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Kevin M. Cafferkey
KEVIN M. CAFFERKEY, (#*0031470*)
Attorney for the Defendant